In considering the question before the Court, the ideas of DICKINSON, J., 4 Dallas, appendix, upon another occasion, appear to be correct. "That the best way of discovering how far arguments, deduced from resolutions of Congress, can be applied upon this occasion, will be to consider them not separately, but conjointly, as forming a system that existed in force at the time of the transaction." So it seems with respect to the Acts of 1715, c. 27, and c. 38, § 5, Ird. 12, 23. These two acts are so inseparably connected, in the consideration of what is necessary to constitute a title, that we cannot have a full view of the first without the other. We will however consider how the law stood previous to the passing of those acts.
By the common law, conveyances of real property *Page 289 
might be made without deed by feoffrnent, therefore the statute 21 J. I. c. 16, did not contemplate title by deed so as to enable the possessor or defendant to avail himself of it. That statute related only to the claim of the plaintiff in relation to the time that constituted a bar. Our Statute of 1715, c. 38, § 5, enacts that "no conveyance or bill of sale for lands (other than mortgage), in what manner or form soever drawn, shall be good and available in law unless acknowledged or proved, and registered in the county where the land lies, which shall be valid without livery of seisin, or other ceremony whatever." This section manifestly does away all other modes of conveying real property, than that by deed. The legislature in their act of the same session, c. 27, declared their reason for passing that act, usually called the Act of Limitations. The caption is "for avoiding suits in law." The preamble states "that great suit, debate, and controversy hath heretofore been and may hereafter arise," and after stating the causes from whence those inconveniences arose, it proceeds "for prevention whereof, and quieting men's estates, and for avoiding suits in law."
The fourth section, after prescribing seven years as "a perpetual bar against all manner of persons whatever," gives a reason, "that the expectation of heirs may not in a short time leave much land unpossessed, and titles so perplexed that no one will know of whom to take or buy land." Taking into view this act only, it would seem that no deed, or color of title by deed, would be necessary on the part of the defendant. Possession alone would be sufficient to enable a possessor to avail himself of the statute; but when it is considered that the fifth section of c. 38 passed during the same session, forbids all other modes of conveyance than that by deed; it will result as a presumption or inference of law that possession alone will not imply right, nor be sufficient to exclude the idea of trespass. As conveyances by feoffments, which might rightfully possess a person of land without deed is not allowable, a bare possession without deed or authority under a deed would always imply a trespass. And hence has *Page 290 
originated the idea of giving color of title to the possessor by deed so as to exclude the idea of trespass. No tort feasor or trespasser on land shall derive a benefit from seven years' possession, as being contrary to a moral principle and sound maxim of law, "that no man shall take advantage of his own wrong."
The argument of the plaintiff's counsel, respecting the effect of the deed from Richie to Inman, seems to be a sound one. Richie, having no legal right, could not convey any. It might operate by way of estoppel to Richie, and his heirs, or by way of covenant to make a legal right, but these are different considerations from that of conveying a title to Inman.
Haywood and Taylor, in their Reports, both say that it is necessary for the possessor to have color of title, and Haywood in 2 vol. 103, 104, says that nothing less than a deed will give color; a bond will not do it.
This seems to be correct. The Act of 1715, c. 38, § 5; will not acknowledge any other method of conveying. It excludes all others, so that a bond with that view would be a nullity.
The main and important question, however, is whether it were necessary to give this color, that the defendant should show a regular chain of conveyances from the grantee to himself. Let the question be considered.
First, independent of the Act of 1797, c. 43, § 4. Secondly, under the alterations introduced by that act. Thirdly, the argument of the defendant's counsel, if they should fail in showing color of title in themselves that they have showed a better subsisting title out of the lessor of the plaintiff, to wit in Inman, and therefore the lessor of the plaintiff ought to be barred.
No decision can be found in Haywood's or Taylor's Reports in point. General reasoning upon the statute may be found in 1 Hay. 68, 70; in page 320 of the same book the Court say "he must take possession with a belief that the land is his own." And in 2 Haywood, page 57, "it was the intent of the act that where a man settled upon and improved lands upon supposition that they were his own, and *Page 291 
continued in occupation for seven years, he should not be subject to be turned out of possession," hence arises the necessity for a color of title, for if he has no such color or pretence of title he cannot suppose the lands are his own, and he settles upon them in his own wrong.
Though these authorities do not decide whether it were necessary for the defendant to connect his title with the original grant by a chain of mesne conveyances, yet there is a strong presumption that it was not thought necessary, or it would have been expressed; when we consider the reason of the statute, and the necessary effects resulting from `the position contended for by the plaintiff's counsel, no doubt can remain.
The statute was made to quiet men's estates; it has already been in operation nearly one hundred years, and, for aught we can say, it may continue as many thousand more.
Nothing can last always; and as records as well as deeds may not only cease to exist by the decay incident to the lapse of time; but may be lost, if not by design, by accident from fire, water, or wind, it would be unreasonable that men's estates should be lost with them. This would not be answering the views of the legislature in "quieting men's estates," and "leaving titles so unperplexed that a man might know of whom to take or buy land." Such a construction does not arise, either from the letter or meaning of the Acts of 1715, cc. 27, 38.
Lord Coke says "tempus est edax rerum," and it is not by the Act of Limitations that color of title is necessary at all, but by the policy of the law, introduced by the Act of 1715, c. 38, that a bonâfide deed to the defendant is necessary, so as to exclude an idea of trespass on the land; it would be carrying the principle of requiring a deed further than the reason which gave rise to it, to make it necessary for the defendant to produce a regular chain of title ad infinitum.Cessante ratione legis cessat ipsa lex.[1]
The reason of the law is attained when we require a bonâ fide
deed for land (which has been granted) *Page 292 
to the defendant himself. It shows that he is not a trespasser, and that he took possession of the land believing it to be his own. One of the most important objects of the act was to guard against the accidents of time, by the loss or destruction of title papers; and by requiring proof of this regular connection of title, the highly useful and beneficial effects of the act would be nearly all lost.
This reasoning accords with the cases in 4 Term Rep. 300, 306; 6 East, 80; 1 Caines, 64. The observation in 2 Fonb. 314, "that the maxims of the common law which refer to descents, discontinuances, non-claims, and collateral warranties, are only the wise acts and inventions of the law to protect and quiet the possession and strengthen the right of purchasers," equally applies to the statute of limitations.
Upon the second ground, it is sufficient to observe, that the Act of 1797, c. 43, § 4, does not apply to this case if the construction of the plaintiff's counsel were correct. The statute began to run before the passage of the act. There was the inception of right which the legislature could not divest. Decl. of Rights, § 20. When the statute begins to run the saving in favor of feme coverts, c, will not hinder it. 1 Hay. 322.
It occurs however strongly that the Act of 1797 will not bear the construction insisted on by the plaintiff's counsel, but upon this no decisive opinion is given.
Before dismissing this question, which is of much consequence to the interest of society, it may not be amiss to refer to an act of North Carolina, 1791, c. 15, 1 Hay. 468. Though not in force here, it deserves respect as being a legislative interpretation of the Act of 1715. This act, after referring to the statute of limitations, and viewing the several imperfect claims contemplated in the second section, enacts that a naked possession for twenty years shall bar the State, upon the presumption of the loss of a grant. It would seem to be highly absurd that the legislature should bar the State, under the want of a grant, and yet that no time should bar as between citizens, where a link of the chain of title happened by accident to *Page 293 
be broken. Had they thus considered the law they could not avoid making provision for an evil of the same kind, but of vastly greater extent in its consequences.
As it respects the third and last proposition; whether it were competent to the defendant to oppose the claim of the plaintiff by showing a better title out of the lessor of the plaintiff, he had no doubt but the common law authorized it. In the discussion of land business, three principles might present themselves.
Two by title and one by repulsion.
First, by title deeds alone.
Secondly, by prescription, or possession, which, in England, was available without showing any title papers.
Thirdly, by repulsion.
The first two may be brought into operation as well for the plaintiff as defendant. The defendant alone can avail himself of the last by showing a better subsisting title out of the lessor of the plaintiff. In this country, however, this should be a clear unembarrassed legal title. And when this is shown it seems to me that the plaintiff cannot recover, agreeably to the principle that he must do so by the strength of his own title, and not by the weakness of his adversaries.[1] The statute well applies to the case of the defendant.
[1] 1 Dall. 434, c, 463; 2 Binn. 119, 120; 3 Binn. 348, 357.
[1] 2 Johns. 393.